
EXHIBIT
B-3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE R. STRICKLAND (AIS #226537),   *

　　Plaintiff,   *

v.   *   CV-05-931

　　*

SAMUEL RAYAPATI, ET AL.,
　　*
　　Defendants.
　　*

## AFFIDAVIT OF SAMUEL RAYAPATI, M.D.

**STATE OF ALABAMA**   )

**COUNTY OF BARBOUR** )

　　BEFORE ME, _____, a notary public in and for said County and State, personally appeared **SAMUEL RAYAPATI, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

　　"My name is Samuel Rayapati. I am a medical doctor and am over twenty-one years of age. I am personally familiar with all of the facts set forth in this affidavit. I have been licensed as a physician in Alabama since 1992. I have served as the Medical Director for Ventress Correctional Facility in Clayton, Alabama, since February of 2004. At all pertinent times, my employment at Ventress Correctional Facility has been with Prison Health Services, Inc. ("PHS"), the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.

Willie R. Strickland (AIS# 226537) is an inmate who has been incarcerated at Ventress Correctional Facility since January 29, 2003. I am familiar with Mr. Strickland's medical history and conditions, and have seen and evaluated him as a patient on numerous occasions. I have also reviewed Strickland's medical records (certified copies of which are being produced to the Court along with this Affidavit.)

On May 17, 2004, Mr. Strickland presented to the healthcare unit at Ventress complaining of pain in his abdomen and groin. I evaluated Mr. Strickland and determined that his pain was possibly associated with a developing hernia. In order to make Mr. Strickland more comfortable, I ordered a supportive truss for his use. On June 3, 2004, Mr. Strickland was re-evaluated for abdominal pain and it was determined that he had developed a small right inguinal hernia. The hernia was not incarcerated. In addition to the supportive truss, I provided Mr. Strickland with "lay in," "bottom bunk" and "no heavy lifting" profiles in order to maximize Mr. Strickland's comfort. I have prescribed him Motrin for pain.

Mr. Strickland has made a complaint in this lawsuit that he has not been provided with appropriate medical care for treatment of his hernia. This allegation is untrue, however, as Mr. Strickland's hernia has been treated appropriately at all times. Since Mr. Strickland's hernia is reducible, surgical correction is not medically indicated.

Based on my review of Strickland's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints have been evaluated in a timely fashion at Ventress Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion. At all times, he has received appropriate medical treatment for his

health conditions from me and the other PHS personnel at Ventress. At no time has he been denied any needed medical treatment. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate.

At no time have I or any of the medical or nursing staff at Ventress Correctional Facility denied Strickland any needed medical treatment, nor have we ever acted with deliberate indifference to any serious medical need of Strickland. At all times, Strickland's known medical complaints and conditions have been addressed as promptly as possible under the circumstances."

Further affiant sayith not.

_____
SAMUEL RAYAPATI, M.D.


STATE OF ALABAMA              )

COUNTY OF BARBOUR             )

I, _Reba J Currie_____, a Notary Public in and for said State and County, hereby certify that SAMUEL RAYAPATI, M.D. who being known to me and who being duly sworn, and whose name is signed to the foregoing document, acknowledged before me on this date that being first informed of the contents of said document, having read the same, and understanding its purpose and effect, voluntarily executed the same upon the above-stated date.

SWORN TO and SUBSCRIBED BEFORE ME on this the _8th_ day of _November_____, 2005.

_____
NOTARY PUBLIC
My Commission Expires: _9-8-08_

(NOTARIAL SEAL)

3

BEFORE THE COMPOSITE STATE BOARD OF MEDICAL EXAMINERS

STATE OF GEORGIA

Composite State Board
of Medical Examiners

JUN 0 9 2000

IN THE MATTER OF:

SAMUEL RAYAPATI, M.D.,
License No. 037345,

Respondent.

DOCKET NUMBER
DOCKET NO. C19-MB-00-125

## PUBLIC CONSENT ORDER

By agreement of the Composite State Board of Medical Examiners and Samuel Rayapati, M.D., Respondent, the following disposition of this matter is entered pursuant to the provisions of the Georgia Administrative Procedure Act, codified as O.C.G.A. § 50-13-13(a)(4) (Ga. Laws 1964, pp. 338, 348, as amended).

### FINDINGS OF FACT

1.

Respondent is licensed to practice medicine in Georgia and was licensed at all times relevant to the matters stated herein.

2.

From on or about August 31, 1994 through on or about July 15, 1996, Respondent provided treatment for patient J.M. (J.M.'s identity will be provided to Respondent upon request).

3.

On May 8, 1996, Respondent admitted J.M., a 50 year-old male with a history of coronary artery bypass graft and insulin dependent diabetes mellitus with diabetic neuropathy, to Meadows Regional Medical Center for congestive heart failure with decompensation. During this admission, Respondent had one uric acid level of 9.2, which is slightly above the reference

range of 2.5 to 8.5 mg/dl. J.M. was taking Lasix pursuant to Respondent's prescription and orders prior to and during this admission, which ended on May 10, 1996.

4.

On May 21, 1996, J.M. complained to Respondent of left leg pain, leg and feet swelling, and tight muscles. The medical record from this visit does not reference a physical examination. Respondent diagnosed acute gout and prescribed Colchicine, .6 mg., po, q.i.d. On June 3, 1996, J.M. complained to Respondent of continued left foot and leg pain and swelling. The medical record from this visit does not reference a physical examination. Respondent planned to rule out several conditions, including gout. J.M. returned to Respondent on June 14, 1996. The medical record does not contain J.M.'s presenting symptoms or any physical examination. Respondent continued his diagnosis of gout.

5.

On June 21, 1996, J.M. complained to Respondent of a swollen left leg and foot. The medical record mentions unilateral leg swelling, but does not otherwise reference a physical examination. Respondent did not check J.M.'s uric acid level. He prescribed Allopurinol 300 mg., po, daily and continued Colchicine .6 mg., po, daily for his diagnosis of gout. On July 11, 1996, J.M. complained to Respondent of chills, loss of appetite, an inability to eat, headache, nausea, and painful joints. Respondent diagnosed peptic ulcer disease, chronic gastritis, and rule out gall stones. The next day, July 12, 1996, J.M. returned to Respondent. The medical record notes a viral upper respiratory infection, cholecystitis, peptic ulcer disease and congestive heart failure. The record does not reference J.M.'s presenting complaints or any physical findings. Respondent prescribed Amantadine and Cipro.

6.

On July 13, 1996, J.M. was admitted to Meadows Regional Medical Center complaining of ulcers on his lips and mouth, puffy eyes, pain, fever, chills and sneezing for two days. Respondent diagnosed severe sepsis and possible anaphylactic reaction to medications. Respondent ordered the Amantadine stopped. On July 15, 1996, a consulting dermatologist

2

diagnosed Stevens-Johnson syndrome, which he did not believe was caused by the Amantadine and Cipro. J.M. was transferred to St. Jospeh's Hospital in Savannah, Georgia, where he died on July 28, 1996 from complications of Stevens-Johnson syndrome. Medical experts have opined that J.M. developed Stevens-Johnson syndrome as an adverse drug reaction to Allopurinol.

7.

Respondent's diagnosis and treatment fell below the minimal standards of acceptable and prevailing medical practice in the following manner:

(a) Respondent failed to perform and/or document adequate physical examinations to support his diagnosis of gout and prescription of Allopurinol;

(b) Respondent diagnosed gout based on a single uric acid level in a patient with a history of congestive heart failure who was on Lasix and had renal insufficiency, which are known to raise uric acid levels;

(c) Even if Respondent had correctly diagnosed gout, he failed to prescribe an initial low dose of Allopurinol, to be slowly increased while observing J.M. for toxicity in light of the history referenced in 7(b), above;

(d) Respondent failed to repeat J.M.'s uric acid level and assess his renal status prior to prescribing Allopurinol; and

(e) There was no medical justification for concurrently prescribing Allopurinol and Colchicine.

8.

Respondent admits to the Findings of Fact and waives any further findings of fact with respect to the above matter. However, Respondent shall be allowed to submit a supplemental statement for the investigative file in explanation and mitigation of the matters stated herein as part of the investigative file for consideration by the Board prior to its review of this Consent Order.

3

## CONCLUSIONS OF LAW

Respondent's conduct constitutes sufficient grounds for the imposition of sanctions upon Respondent and Respondent's license to practice medicine in the State of Georgia under O.C.G.A. Chs. 1 and 34, T. 43, <u>as amended</u>. Respondent hereby waives any further conclusions of law with respect to the above-styled matter.

## ORDER

The Composite State Board of Medical Examiners (hereinafter the "Board"), having considered the particular facts and circumstances of this case, hereby orders, and Respondent hereby agrees, to the following terms of discipline:

1.

Within one (1) year of the effective date of the Consent Order, Respondent shall obtain thirty (30) hours of continuing medical education in the areas of the diagnosis and treatment of gout and adverse drug reactions. Prior to obtaining the continuing medical education, Respondent shall submit the title of the course(s) he plans to attend and information concerning the course(s) to the Board. Upon successful completion of the course(s), the Respondent shall submit documentation thereof to the Board. <u>This requirement shall be in addition to the continuing education requirements set forth in O.C.G.A. § 43-34-3.</u>

2.

Respondent shall abide by all State and Federal laws regulating the practice of medicine or relating to drugs, the Rules and Regulations of the Composite State Board of Medical Examiners, and the terms of this Consent Order. If Respondent shall fail to abide by such laws, rules, terms or orders, or if it should appear to the Board that Respondent is otherwise unable to practice medicine with reasonable skill and safety to patients, Respondent's license shall be subject to further discipline, including revocation, upon substantiation thereof after notice and hearing, and if revoked, the Board in its discretion may determine that the license should be permanently revoked and not subject to reinstatement. Respondent further agrees that any violation of this Consent Order shall be deemed sufficient to authorize the

4

Board to order summary suspension of Respondent's license, pending further proceedings, pursuant to the provisions of the Georgia Administrative Procedure Act, O.C.G.A. § 50-13-18(c)(1), or any other statute authorizing emergency action, but Respondent understands that Respondent shall be entitled to an expedited hearing to substantiate such violation(s) if the Board exercises such right.

3.

In addition to and in conjunction with any other sanction contained herein, Respondent shall submit to the Board a fine of two thousand dollars ($2,000.00) to be paid in full by cashier's check or money order within thirty (30) days of the effective date of this Consent Order. Failure to pay the full amount of the fine by the thirtieth day shall be considered to be a violation of this Consent Order and shall result in further sanctioning of Respondent's license, including revocation, upon substantiation thereof.

4.

In addition to and in conjunction with any other sanction contained herein, this Consent Order shall constitute a public reprimand by the Board to Respondent for his conduct.

5.

Respondent acknowledges that he has read this Consent Order and that he understands its contents. Respondent understands that he has the right to a hearing in this matter, and Respondent freely, knowingly and voluntarily waives such right by entering into this Consent Order. Respondent understands that this Consent Order will not become effective until approved and docketed by the Composite State Board of Medical Examiners. Respondent further understands and agrees that a representative of the Department of Law may be present during the presentation of this Consent Order and that the Board shall have the authority to review the investigative file and all relevant evidence in considering this Consent Order. Respondent further understands that this Consent Order, once approved, shall constitute a public record, which may be disseminated as a disciplinary action of the Board. However, if this Consent Order is not approved, it shall not constitute an admission against interest in this proceeding, or

5